UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
Richard A Leslie Co., Inc.,

       Plaintiff,                                          PLAINTIFF'S MOTION FOR
                                                        PRELIMINARY INJUNCTIVE
              v.                                   RELIEF

Birdie, LLC, and Golfsmith International                07-cv-5933 (LAK)
Holdings, Inc.,

       Defendants.
---------------------------------------------------------x


       On the accompanying Memorandum of Law and supporting papers, Plaintiff hereby

moves the Court for an order Preliminarily enjoining Defendants from further sales, advertising

and promotion of clothing products bearing the mark "Birdie" or confusingly similar variations

thereof pending the resolution of the present case.


                                  _____
                                  Jeffrey Sonnabend (JS1243)
                                  SonnabendLaw
                                  600 Prospect Avenue
                                  Brooklyn, NY 11215-6012
                                  718-832-8810
                                  JSonnabend@SonnabendLaw.com

                                  Attorney for Plaintiff

                                  Dated: September 7, 2007

.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION FOR PRELIMINARY INJUNCTIVE

RELIEF was served on the date below upon counsel for Defendants by first class mail to:

> Mr. Toby M.J. Butterfield
> Cowan, DeBaets, Abrahams & Sheppard LLP
> 41 Madison Avenue
> 34th Floor
> New York, NY 10010

_____

Jeffrey Sonnabend (JS1243)
Attorney for Plaintiff

SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215
718-832-8810
JSonnabend@SonnabendLaw.com

Dated: September 7, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
Richard A Leslie Co., Inc.,

       Plaintiff,

            v.

Birdie, LLC, and Golfsmith International
Holdings, Inc.,

       Defendants.
--------------------------------------------------------x

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF ITS MOTION
FOR PRELIMINARY
INJUNCTIVE RELIEF

07-cv-5933 (LAK)

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# TABLE OF CONTENTS

SUMMARY OF PERTINENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Standards for Preliminary Injunction are Met in the Present Case . . . . . . . . . . . . . . 4

    Plaintiff is Likely to Succeed on the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Plaintiff's Has Established Trademark Rights: Its Marks Have Been
            Registered, Have Been in Use Since the 1950's, and are Inherently
            Distinctive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Defendants' Acts are Assured to Cause Confusion: Their Mark is Identical
            to Plaintiff's for Identical Goods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        Defendants Cannot Prevail in Their Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    Plaintiff Will be Irreparably Harmed Absent a Preliminary Injunction . . . . . . . . . . . . . 20

        Plaintiff's Convincing Showing of Likelihood of Success on the Merits
            Yields a Strong Presumption of Irreparable Harm . . . . . . . . . . . . . . . . . . 21

        Plaintiff Risks Losing its Recently Revitalized Brand – and its Business –
            Due to Defendants' ongoing Infringement . . . . . . . . . . . . . . . . . . . . . . . . 21

        Plaintiff has Acted as Diligently as Humanly Possible in Bringing the
            Instant Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    The Balance of Hardships Tips Decidedly in Plaintiff's Favor . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**Cases**

*American Footwear Corp. v. General Footwear Co. Ltd.*, 609 F.2d 655, 662 (2d Cir. 1979), *cert. denied* 445 U.S. 951 , 100 S.Ct. 1601 (1980) . . . . . . . . . . . . . . . . . . . . . . . . 11

*American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Aztar Corp. v. NY Ent., LLC,*15 F. Supp. 2d 252 (E.D.N.Y. 1998), *aff'd* 210 F.3d 354 (2d Cir 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125 (2d Cir. 2004) . . . . . . . . . . . . . 21

*Clairol Inc. v. Gillette Co.*, 389 F.2d 264, 269 (2d Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*De Beers LV Trademark Limited v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561 (1975) . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Gucci America, Inc. v. Exclusive Imports Int't*, 2007 WL 840128 (S.D.N.Y. 2007, Mar 19, 2007) (NO. 99 CIV. 11490(RCC)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261 (Fed. Cir. 2002) . . . . . . . . . . . . . . 12

*John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24 (2d Cir. 1978), *cert. denied* 440 U.S. 960 , 99 S.Ct. 1502 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*K2 Advisors, LLC v. K2 Volatility Fund, LP*, 2002 WL 31235701 (S.D.N.Y. Oct 04, 2002) (NO. 02 CIV.3984 (AGS)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) . . . 5, 7, 10, 11

*Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) . . 10, 21

*MetLife, Inc. v. Metropolitan Nat. Bank*, 388 F.Supp.2d 223 (S.D.N.Y. 2005) . . . . . . . . . . 24, 25

*New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183 (2d Cir. 2001) . . . . . . . . . . . . . . . . . 21

*Nikon Inc. v. Ikon Corp.*, 987 F.2d 91 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Performance Unlimited, Inc. v. Questar Publishers, Inc.* 52 F.3d 1373 (6th Cir. 1995) . . . . . . . 22

*Polaroid Corp. v. Polarad Elecs.*, 287 F.2d 492, 495 (2d Cir.1961), *cert. denied* 368 U.S. 820 , 82 S.Ct. 36 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sanofi-Synthelabo v. Apotex Inc.*, 488 F.Supp.2d 317 (S.D.N.Y. 2006), *aff'd* 470 F.3d 1368 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Sonora Cosmetics, Inc. v. L'Oreal S.A.*, 631 F.Supp. 626, 630 (S.D.N.Y. 1986) . . . . . . . . . . . . 6

*T. Anthony, Ltd. v. Malletier*, 1993 WL 659682 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 6

*The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996) . . . . . . . . . . 17

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) . . . 5, 22, 24

*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 113 S.Ct. 2753, 2757  (1992) . . 5, 7, 9

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003) . . . . . . . . . . . . . 10, 14, 15, 18, 19

**Statutes and Rules**

15 U.S.C. § 1052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

15 U.S.C. § 1057(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1065 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 1115(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# SUMMARY OF PERTINENT FACTS

Plaintiff's predecessor in interest, Globe Sports Products, was founded in or about 1936. Solomon Declaration at ¶ 2. Richard A. Leslie Co. was formed as a division of Globe Sports Products in 1956 to handle retail accounts. Solomon Declaration at ¶ 2. Eventually, Plaintiff Richard A. Leslie Co. became the dominant business entity, and Globe Sports Products' business was consolidated into Richard A. Leslie Co. Solomon Declaration at ¶ 2.

Plaintiff established the "Birdie" mark for use on jackets and other clothing no later than 1956. Solomon Declaration at ¶ 5. Plaintiff has used the mark continuously since 1956 on its products, and on its product labels, advertisements and catalogs. Solomon Declaration, at ¶¶ 5 and 10 and Exhibits 2 and 3.

Plaintiff's business under the "Birdie" mark grew substantially from the mid 1950's through the late 1980's. Solomon Declaration at ¶ 12. At the height of its business, Plaintiff employed, either directly or as independent contractors, over 175 individuals, including a sales force of 15-20 representatives. Solomon Declaration at ¶ 14.

From the inception of the "Birdie" brand through the present, Richard A. Leslie Co., Inc. has sold approximately RED ACT million jackets under the "Birdie" brand for total sales of approximately RED ACT million. Solomon Declaration at ¶ 15.

The "Birdie" mark was so strong that it became synonymous with the Plaintiff, the Richard A. Leslie Co. Solomon Declaration at ¶ 13; Braun Declaration at ¶ 7; Faye Declaration at ¶ 5; Lonigro Declaration at ¶ 7. To this day, Plaintiff receives numerous inquires, orders, and even payment checks to "Birdie", not "Richard A. Leslie Co." Solomon Declaration at ¶ 13 and Exhibit 4.

1

Plaintiff has received three registrations covering its "Birdie" mark in both word form and stylized/logo form.  Sonnabend Declaration, Exhibit 1.  Plaintiff inadvertently permitted two of its registrations to go abandoned by failing to pay necessary renewal fees.   Solomon Declaration at ¶ 11.  Plaintiff currently has pending an application for registration corresponding to one of the abandoned registrations.  Sonnabend Declaration at ¶ 1.

From its inception, the "Birdie" brand focused on sporting related clothing, with an emphasis on golf, among other sports.  Solomon Declaration at ¶¶ 4 and 7.  Indeed, the original "Birdie" logo utilized images of golf balls, golf tees and a golf club to spell the mark:



(Plaintiff's Mark)

Solomon Declaration at ¶ 8 and Exhibit 1; Sonnabend Declaration, Exhibit 1.  The golf logo continues in use to the present day.   Solomon Declaration at ¶ 8 and Exhibit 1.

From the outset, Plaintiff's catalogs featured "golf jackets," displaying the jackets on golfers and/or in layouts featuring golf equipment.  Solomon Declaration, Exhibit 3.  To this day, Plaintiff markets its jackets to golfers and sells "golf jackets" specifically to golfers.  Solomon Declaration at ¶ 7; Marcus Declaration at ¶ 5.  Plaintiff's "Birdie" brand jackets continue to be sold at retail sporting goods establishments that also sell golf equipment and/or other golf apparel.  Lonigro Declaration at ¶ 5.

2

Plaintiff's sales began a steady downward trend starting in the late 1980's, and continued to their nadir somewhere in late 2006. Solomon Declaration at ¶ 17. Plaintiff's staff and sales force dwindled until eventually only Kenneth Solomon, grandson of one of the two founders, remained. Solomon Declaration at ¶ 3. A son of the other founder, Eric Solomon, remained listed as "Vice President/CFO", but was in fact no longer employed by Plaintiff. *Id.*

The situation appeared so hopeless to Mr. Solomon that he decided to wind-up operations, informing his customers of his decision in a letter dated January 25, 2007. Solomon Declaration at ¶ 20 and Exhibit 7. Fortunately for Plaintiff, before Mr. Solomon terminated any business activities or the use of the "Birdie" mark, he was able to develop an arrangement with an overseas clothing manufacturer. Solomon Declaration at ¶ 21. Plaintiff's agreement with the manufacturer was structured in such a way as to permit Plaintiff to continue in operation; the agreement gave Plaintiff an opportunity to continue business operations and continue uninterrupted its commercial use of the "Birdie" mark for sporting/golf jackets. *Id.*

At no time did Richard A. Leslie Co., Inc. terminate the business of Richard A. Leslie Co., Inc.. Solomon Declaration at ¶ 23. At no time did Richard A. Leslie Co., Inc. cease operations. *Id.* At no time did Richard A. Leslie Co., Inc. stop filling orders for "Birdie" products. *Id.* At no time did Richard A. Leslie Co., Inc. discontinue use of the "Birdie" mark. *Id.* At no time did Richard A. Leslie Co., Inc. tell others that they were free to use the "Birdie" mark. *Id.*

In May, 2007, Defendant Birdie LLC contacted Plaintiff, seeking to initiate discussions regarding acquiring rights in Richard A. Leslie Co., Inc.'s "Birdie" mark. Solomon Declaration at ¶ 24. Defendant Birdie LLC indicated that it had erred by not ascertaining the availability for

3

use the "Birdie" mark before beginning use of the mark.  *Id.*  Defendant Birdie LLC explained to

Plaintiff that it had begun use of the "Birdie" mark but had been denied registration based in part

on Plaintiff's registration.  *Id.*  Talks proceeded, but it soon became apparent to Richard A. Leslie

Co., Inc. that Birdie LLC was not proceeding in good faith.  Solomon Declaration at ¶ 25.

    Plaintiff attempted unsuccessfully to move the discussions forward in a productive

manner or have Defendant Birdie LLC cease all use of the "Birdie" mark.  Solomon Declaration

at ¶ 26.  When by the last week of June, 2007, it finally became apparent to Plaintiff that it stood

little chance of achieving either goal without some overt action, it retained legal counsel and filed

suit.  *Id.*  Still holding out hope that negotiations could be re-opened productively, Plaintiff held-

off on preparing the instant motion.  *Id.*

    After Plaintiff was contacted initially by opposing counsel, Plaintiff came to the

conclusion that no further negotiations would be following, and so Plaintiff began preparing the

instant motion.  Solomon Declaration at ¶ 27.  Plaintiff has been diligently collecting the

necessary materials and making necessary contacts with declarants in connection with the instant

motion ever since.  Solomon Declaration at ¶¶ 28-29 .  The process took some time while Mr.

Solomon continued to run the day-to-day operations of the company.  Solomon Declaration at ¶

29.

## ARGUMENT

### I.    The Standards for Preliminary Injunction are Met in the Present Case

    Preliminary injunctions provide the Court with the critical ability to maintain the status

quo – to prevent fatal harm to a party – while a suit is pending.  Ideally, a preliminary injunction

will "keep the parties, while the suit goes on, as far as possible in the respective positions they

occupied when the suit began." *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006).  In extreme circumstance, a preliminary injunction will prevent a party from failing outright while the suit is pending.  *See, e.g., Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995).

With the purpose of preliminary injunctions in mind, Courts must apply the well established test when deciding a motion for preliminary injunction.  In order to prevail on its motion, a plaintiff must demonstrate (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor. *Louis Vuitton Malletier*, 454 F.3d at 113-14.  In the trademark infringement context, to prevail on the merits, a plaintiff must show legally cognizable trademark rights and the use of a confusingly similar mark by a defendant.  *Id*. at 114-15.

## II.    Plaintiff is Likely to Succeed on the Merits

### A.    Plaintiff's Has Established Trademark Rights: Its Marks Have Been Registered, Have Been in Use Since the 1950's, and are Inherently Distinctive

Hornbook law holds that to establish trademark rights, a party must demonstrate that its purported mark functions as such; that is, that the purported mark must be distinctively identify one source of goods or services and distinguish it from other sources.  *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 113 S.Ct. 2753, 2757  (1992); *Louis Vuitton Malletier*, 454 F.3d at 116; *Clairol Inc. v. Gillette Co.*, 389 F.2d 264, 269 (2d Cir. 1966).

Plaintiff's marks are distinctive, as demonstrated by their present and former registration on the Principal Register (including one incontestible registration), their arbitrary (inherently distinctive) nature, and their extensive use.

### 1. Plaintiff's Marks have been Registered on the Principal Register, at Least One Incontestibly

Marks that receive federal registration on the Principal Register under section 2 of the Lanham Act, 15 U.S.C. § 1052 are strongly statutorily presumed to be distinctive:

> [a] certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

Lanham Act § 7(b), 15 U.S.C. § 1057(b).  The Second Circuit has long recognized the particular strength of this statutory presumption:

> [t]he fact that the Patent Office [i.e., Trademark Office] was willing to register [the mark] on the Principal Register creates a strong presumption of the validity of the mark

*American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1978); *T. Anthony, Ltd. v. Malletier*, 1993 WL 659682 at*3, fn 3 (S.D.N.Y. 1993),("the presence of Vuitton's federal trademark registration on the Principal Register creates a strong presumption of validity and stands as proof of the strength of the mark."); *Sonora Cosmetics, Inc. v. L'Oreal S.A.*, 631 F.Supp. 626, 630 (S.D.N.Y. 1986) ("[a]s our Court of Appeals has said, '[t]he fact that the Patent Office was willing to register [its mark] on the Principal Register creates a strong presumption of the validity of the mark.' To hold that this presumption may be dissipated, before

trial on the merits, by allegations of invalidity would be to eviscerate the protection which Congress intended to provide to owners of registered trademarks through the injunction power of the federal courts." (footnote omitted)).

An owner's rights in a mark further strengthens upon the mark becoming "incontestible," a statutorily created status achieved after five years of continuous use of the mark:

> the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable . . . .

Lanham Act § 15, 15 U.S.C. § 1065; *and see Gucci America, Inc. v. Exclusive Imports Int't*, 2007 WL 840128 at *3 (S.D.N.Y. 2007, Mar 19, 2007) (NO. 99 CIV. 11490(RCC)) ("because Gucci utilized the mark continuously for more than five years, the marks have become incontestible. 15 U.S.C. § 1065. Because the mark is now incontestible, its registration 'shall be conclusive evidence . . . of [Gucci's] exclusive right to use the registered mark in commerce.'" (alterations in original)).

Finally, the determination of whether an unregistered mark is entitled to protection under section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a), is substantially the same as the test for registerability on the Principal Register under section 2 of the Lanham Act, 15 U.S.C. § 1052. *Two Pesos*, 505 U.S. at 768, 113 S.Ct. at 2757; *Louis Vuitton Malletier*, 454 F.3d at 116. A mark that has registered on the principal register has by definition "passed the test" for distinctiveness. By the same token, a mark that was previously registered, but whose registration was inadvertently allowed to lapse despite continued use, has itself "passed the test". Simple logic dictates that the innocent error of allowing a registration to lapse does not affect the

substantive findings inherent in the registration, and so such a mark, although procedurally now an unregistered mark, may be presumed distinctive for the very same reason that it was initially found distinctive and allowed registration.  In other words, a mark's distinctiveness – inherently established through registration – doesn't simply "evaporate" if and when its registration is allowed to lapse.

In the present case, Plaintiff is owner of the mark "Birdie," in word mark form as well as various stylized "logo" forms, for clothing including jackets.  Plaintiff is owner of federal trademark registration no. 2,456,349  for a stylized version of "Birdie Jackets".  Sonnabend Declaration, Exhibit 1.  In this registration, Plaintiff has disclaimed the term "Jackets", rendering the dominant portion of the registered mark "Birdie".  This registration is incontestible.  *Id.*

Plaintiff was owner of federal trademark registration nos. 1,329,733 and 1,329,732 for the mark "Birdie" in stylized and non-stylized forms.  *Id*.  The Trademark Office cancelled these registrations based on Plaintiff's inadvertent failure to file certain declarations required by section 8 of the Lanham Act.  Solomon Declaration at ¶ 11.  Importantly, the foregoing registrations were cancelled for purely procedural reasons – the registrant mistakenly failed to file its Combined Renewal Application and Section 8 Declarations – and not for substantive reasons or discontinued use of the marks.  *Id.*

Together, Plaintiff's three registrations demonstrate above all else that Plaintiff's marks are distinctive, as all marks must be before being registered on the principal register, and that Plaintiff has used them in commerce sufficiently to warrant protection.

> **2.      Plaintiff's Marks Have Been in Use Since
>           the 1950's**

Plaintiff has firmly established its rights in the "Birdie" mark through over a half-century of use.    Plaintiff first began selling jackets under the "Birdie" mark no later than1956.  Solomon Declaration at ¶¶ 2 and 5 .   During that time, Plaintiff estimates it has sold RED million jackets ACT bearing the "Birdie" brand.  Solomon Declaration at ¶ 15.   Plaintiff's use has continued uninterrupted since its first use.  Solomon Declaration at ¶¶ 5, 7 and 8 .  Plaintiff's half-century-in-the-making rights are superior to Defendant Birdie LLC's, who has used the mark for less than two and a half years.  Sonnabend Declaration, Exhibit 2.

### 3.    Plaintiff's Marks are Inherently Distinctive

Marks may be categorized into five categories of distinctiveness:

> [m]arks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.

*Two Pesos*, 505 U.S. at 768, 113 S.Ct. at 2757.  Of these five categories, the latter three are considered inherently distinctive, that is, they are distinctive from the outset and do not require any period of use before becoming distinctive.  *Id.* ("[t]he latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection.").  By contrast, marks which are "merely descriptive" of a product or are which are a common name for a product (e.g., "car" for automobiles) are not inherently distinctive.

The mark "Birdie" for jackets and other clothing cannot be said to describe anything about the product, nor is "Birdie" a common name for jackets, and so Plaintiff's marks are clearly categorized as inherently distinctive.  As discussed in greater detail in section II.A.1

above, the Trademark Office recognized the inherent distinctiveness by permitting registration of the "Birdie" marks on the principal register, and nothing has transpired to alter this conclusion in any way.  Plaintiff's "Birdie" marks are inherently distinctive.

> **B.     Defendants' Acts are Assured to Cause Confusion: Their Mark is Identical to Plaintiff's for Identical Goods**

After demonstrating that its mark is entitled to protection, to succeed on a claim for trademark infringement under the Lanham Act, a plaintiff must next demonstrate that the defendant's use of its mark or marks is likely to cause consumer confusion as to the origin or sponsorship of the goods in question.  *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003).  Stated slightly differently:

> [i]n an action for trademark infringement, where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits.

*Virgin Enters. Ltd.*, 335 F.3d at 146.

To evaluate the likelihood of consumer confusion, courts must apply the well settled "Polaroid Factors."  *Louis Vuitton Malletier*, 454 F.3d at 116; *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) ; *Polaroid Corp. v. Polarad Elecs.*, 287 F.2d 492, 495 (2d Cir.1961), *cert. denied* 368 U.S. 820 , 82 S.Ct. 36 (1961). The "*Polariod* factors" include:

> (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.

*Louis Vuitton Malletier*, 454 F.3d 116.  In the present case, the second and third elements alone carry Plaintiff's burden – the parties' marks are identical (or virtually so, in the case of the logo), and the goods are identical – and the remaining factors further bolster the conclusion of likelihood of confusion.

### 1.    Polaroid Factor 1 - Strength of the Mark

The first Polaroid factor, strength of the mark, has been discussed at length in preceding section.  In short, the marks are inherently distinctive, as they are neither generic for nor descriptive of the goods for which they are used.  Furthermore, even if the marks were not considered inherently distinctive, they certainly would have acquired distinctiveness after more than a half century of use by Plaintiff.  The fact that Plaintiff's customers time-and-again refer to the company as "Birdie", and not "Leslie Co." demonstrates the strength of the mark in the eyes of consumers.  Solomon Declaration at ¶ 13 and Exhibit 4; Braun Declaration at ¶ 7; Faye Declaration at ¶ 5; Lonigro Declaration at ¶ 7.

### 2.    Polaroid Factor 2 -  The Degree of Similarity Between the Two Marks

The similarity of the marks is a *key factor* in determining likelihood of confusion.  *Louis Vuitton Malletier*, 454 F.3d at 117.  In determining this key factor, courts must assess whether the marks in question are likely to leave similar impressions on consumers.  *Id.* ("courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." (internal quotations omitted)).

Where marks comprise both non-descriptive and descriptive words, the non-descriptive words will act as the dominant portion.  *See, e.g., American Footwear Corp. v. General*

*Footwear Co. Ltd.*, 609 F.2d 655, 662 (2d Cir. 1979), *cert. denied* 445 U.S. 951 , 100 S.Ct. 1601 (1980) ("Universal had in fact established a protectable right in the terms 'Bionic Man' or 'Bionic Woman' then, under principles of trademark law, American has infringed by the use as the dominant portion of its mark, the portion, 'bionic,' which most clearly identifies the sponsor of the goods, and therefore American should have been enjoined from the use of 'bionic.'"); *and see Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, (7th Cir. 2001) ("[a]s we have already stated, the term 'Beanie' [in the mark 'Beanie Baby'] is salient and reduces the importance of the surrounding elements. The additional marks on the Beanie Racers may not reduce the likelihood of confusion among consumers . . . .").

Likewise, where the Trademark Office has required a trademark owner to disclaim a portion of its mark, the remaining portion is considered the dominant portion. *See, e.g., K2 Advisors, LLC v. K2 Volatility Fund, LP*, 2002 WL 31235701 at * 8 (S.D.N.Y. Oct 04, 2002) (NO. 02 CIV 3984 (AGS)) ("The Patent and Trademark Office disclaimed the 'Advisors' portion of the trademark, thus giving rise to a presumption that 'K2' is the dominant or core portion."); *and see*, *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1266 (Fed. Cir. 2002) (considering marks "Hewlett-Packard" and "Packard Technologies", held that "Packard" was dominant portion in light of disclaimer of "Technologies").

In the present case, Plaintiff holds a registration on the following stylized depiction "Birdie Jackets":



(Plaintiff's Mark)

Sonnabend Declaration, Exhibit 1.  The registration disclaims "Jackets", leaving the word

"Birdie" and a small graphical element.  Sonnabend Declaration, Exhibit 1.  The literal element

"Birdie" clearly dominates the mark.  Similarly, Plaintiff held a registration on the word mark

"Birdie," without any additional terms or graphics, that was inadvertently permitted to lapse,

Sonnabend Declaration, Exhibit 3, and it continues to use the mark in commerce.  Finally,

Plaintiff held a registration, also inadvertently allowed to lapse, in the following logo featuring a

stylized depiction of "Birdie":



(Plaintiff's Mark)

Sonnabend Declaration, Exhibit 3.  Again, the dominant portion of the mark is inarguably the

word "Birdie".

 Defendant Birdie LLC's marks consist of both word marks and composite/stylized marks.

The word marks consist of "Birdie Brand Golf" and "Birdie".  Sonnabend Declaration, Exhibit 2.

In the former mark, "Brand Golf" is disclaimed, leaving "Birdie" as the dominant portion.  *Id.*

Defendant Birdie LLC's graphical mark prominently features the word "Birdie" in precisely the same way that Plaintiff's marks feature the word:



(Defendant's Mark)

Sonnabend Declaration, Exhibit 2.

The commercial impression both Plaintiff's and Defendant Birdie LLC's marks all veritably shout "Birdie".  Plaintiff's marks and Defendant Birdie LLC's marks are not merely similar, they are virtually identical.

### 3.    Polaroid Factor 3 - The Competitive Proximity of the Products

The "competitive proximity" factor focuses on the areas of commerce in which the two parties' goods operate.  *Virgin Enters. Ltd.*, 335 F.3d at 149-50 ("the closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source.").  Importantly, the goods need not be identical for this factor to favor injunction:

> [w]hile plaintiff had not sold telephones or telephone service prior to defendant's registration evincing intent to sell those items, plaintiff had sold quite similar items of consumer electronic equipment. These included computer video game systems, portable cassette-tape players, compact disc players, MP3 players, mini-disc players, and disposable cameras. Like telephones, many of these are small consumer electronic gadgets making use of computerized audio communication. They are sold in the same channels of commerce. Consumers would have a high expectation of finding

14

> telephones, portable CD players, and computerized video game
> systems in the same stores. We think the proximity in commerce of
> telephones to CD players substantially advanced the risk that
> consumer confusion would occur when both were sold by different
> merchants under the same trade name, VIRGIN.

*Id.* at 150.

In the present case, the goods at question are far more similar than even those in *Virgin*.

Plaintiff's goods comprise articles of clothing aimed at sports markets in general and at golfers,

among others, specifically.  Solomon Declaration at ¶¶ 7 and 10 and Exhibit 3,  Marcus

Declaration at ¶ 5; Lonigro Declaration at ¶ 2.  Plaintiff's customers include sporting goods

stores, many of which sell golf related sporting goods.  Lonigro Declaration at ¶¶ 1, 2 and 5.

Plaintiff's customers also include individuals who have purchased Plaintiff's "Birdie" branded

goods specifically for golf events.  Marcus Declaration at ¶ 5.  Indeed, at least one of Plaintiff's

logos even incorporates golf themes in the form of golf clubs and tees into its design:



(Plaintiff's Mark)

Sonnabend Declaration, Exhibit 1.

Likewise, Defendant Birdie LLC's goods are clothing expressly marketed to sportsmen

and women, in particular to golfers.  Sonnabend Declaration, Exhibits 2 and 4.   The goods are

sold through sporting goods stores, such as those operated by Defendant Golfsmith International

15

Holdings, Inc., whose stores cater expressly to golf enthusiasts.  Sonnabend Declaration, Exhibit 4.

Both Plaintiff's and Defendants' goods are sold to and used by the same customers.  To be in closer proximity in commerce, Plaintiff's and Defendant's goods would have to be sold together on the same hanger.

### 4.    Polaroid Factor 4 - Actual Confusion

Actual confusion, when present, may be a strong indicator of infringement; however, the Polaroid analysis does not require a showing of actual confusion.  *See, e.g., De Beers LV Trademark Limited v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249 (S.D.N.Y. 2006) (noting that "[s]ince defendants have not yet used their mark in commerce, data regarding actual confusion among consumers, which would ordinarily be difficult to develop in any context, is impossible to obtain here"); *Aztar Corp. v. NY Ent., LLC,* 15 F. Supp. 2d 252, 261 (E.D.N.Y. 1998), *aff'd* 210 F.3d 354 (2d Cir 2000)  ("it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source").

Where, as here, the marks in question are virtually identical, it is difficult to imagine consumers *not* being confused, even if actual confusion has not been witnessed.

### 5.    Polaroid Factor 5 - The Likelihood that
### Plaintiff will "Bridge the Gap"

The "bridging the gap" factor relates closely to the third factor, proximity of the two parties' goods, in that it examines the likelihood that, to the extent the goods are not in close proximity, Plaintiff "will enter [defendant's] business or the average customer's perception of the

likelihood that the plaintiff would enter the defendant's market." *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 963 (2d Cir. 1996).

In the present case, the goods are substantively identical, and so there exists no gap to bridge. Even if Defendants were to argue that Plaintiff's and Defendant's clothing are somehow different, such an argument would ring hollow, as both the Trademark Office and Defendant Birdie LLC have already recognized. Defendant Birdie LLC submitted an application for registration of the "Birdie" mark for clothing, and the registration was refused based on a likelihood of confusion with Plaintiff's mark. Sonnabend Declaration, Exhibit 5. Rather than fight a losing battle, Defendant Birdie LLC contacted Plaintiff seeking to license or acquire Plaintiff's trademark rights, thereby removing the basis of the refusal. Solomon Declaration at ¶ 24.

Again, both the Trademark Office and Defendant Birdie LLC have recognized the identity of Plaintiff's and Defendants' goods – the "gap" to "bridge" is zero.

### 6.    Polaroid Factor 6 - Defendant's Bad Faith in Adopting its Mark

Defendant Birdie LLC could not have adopted the "Birdie" mark with more bad faith – it adopted and used the mark fully aware of Plaintiff's long standing trademark rights.

As discussed in the preceding section, Defendant Birdie LLC learned of Plaintiff's trademark rights when the Trademark Office rejected its application, if not earlier. Sonnabend Declaration, Exhibit 5. Defendant Birdie LLC recognized Plaintiff's rights, as demonstrated by its decision to seek to obtain those rights from Plaintiff. Solomon Declaration at ¶ 24. Defendant Birdie LLC's bad faith showed clearly when it unilaterally decided to continue use of its mark despite breaking-off licensing/acquisition discussions with Plaintiff.

17

Defendant Birdie LLC's actions have been textbook bad faith, and this factor weighs heavily in Plaintiff's favor.

### 7.     Polaroid Factor 7 - Quality of Defendant's Goods

The Second Circuit has noted that the quality of Defendant's goods, whether that quality is lesser than Plaintiff's quality of goods, comparable to Plaintiff's, or even superior to Plaintiff's, is of little probative value in the likelihood of confusion analysis.  *Virgin Enters. Ltd.*, 335 F.3d at 152 ("[t]he issue of the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion.").

To the extent this factor has any substantive relevance to the inquiry, the Second Circuit has found that  "a product of equal quality promotes confusion that they come from the same source."  *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir. 1993).

In the present case, Plaintiff believes that Defendant Birdie LLC's products are of similar quality to Plaintiff's.  Whether or not Defendants contend that Defendant Birdie LLC's products are superior in quality to Plaintiff's remains both to be seen and largely irrelevant – regardless of how this weak factor is ultimately resolved, it can do nothing to alter the analysis of the more important factors.  No amount of differentiation in product quality can erase the strong likelihood of confusion demonstrated by the preceding factors.

### 8.     Polaroid Factor 8 - The Sophistication of the Purchasers

Finally, the Court may assess the sophistication of the purchaser of the goods at issue. *See, e.g,. Virgin Enters. Ltd.*, 335 F.3d at 151.  As the Second Circuit has recognized, ordinary retail purchasers of relatively inexpensive goods (e.g., clothing) such as those in the present case

are more likely to be confused than professional buyers or purchasers of expensive items (e.g,

automobiles):

> [w]here the purchasers of a products are highly trained
> professionals, they know the market and are less likely than
> untrained consumers to be misled or confused by the similarity of
> different marks. The district court recognized that [r]etail
> customers, such as the ones catered to by both the defendants and
> [plaintiff], are not expected to exercise the same degree of care as
> professional buyers, who are expected to have greater powers of
> discrimination.

*Id.* (internal quotes omitted).

Defendants' customers are ordinary retail consumers (indeed, Defendant Golfsmith LLC

is a sporting goods and clothing retailer).  Plaintiff's customers are ordinary retail consumers as

well.  Lonigro Declaration at ¶¶ 1, 2, 4 and 5.  Plaintiff's average wholesale unit price (by its very

nature a fraction of the retail price) is currently approximately $16-$20.  Solomon Declaration at

¶ 19.  Defendant Birdie LLC's products range in price at retail from roughly $35 to $120, as

shown by Defendant Golfsmith LLC's retail website.  Sonnabend Declaration, Exhibit 4.

Clearly, the products at issue here are not big-ticket items.  The ordinary retail consumers that

shop for and purchase Plaintiff and Defendant Birde LLC's products are likely to be easily

confused between the marks.

### 9.    The Polaroid Factors Heavily Favor a
### Finding of Likelihood of Confusion

Virtually every Polaroid factor, if not literally every factor, demonstrates an

overwhelming likelihood of confusion between the marks.  Absent a very compelling defense – a

defense Defendants are unlikely to have – Plaintiff will prevail on the merits of its trademark

infringement action.

###### C.    Defendants Cannot Prevail in Their Defenses

In their answer in the present action, Defendants have espouse two affirmative defenses. Neither has any merit.

First, Defendants allege that "Plaintiff's Complaint fails to state a claim upon which relief can be granted."  *See*, Answer at 5.  It is difficult to comprehend what Defendants have in mind with their first affirmative defense.  The Complaint clearly states a claim for trademark infringement under the Lanham Act and under common law, including infringement of an incontestible mark.  This affirmative defense, apparently included by rote, is wholly baseless, so much so that the requirements of Fed. R. Civ. P. 11 are called into serious question.

Second, Defendants allege that "[u]pon information and belief, Plaintiff's claims, if any, are barred, in whole or in part, by the equitable doctrines of acquiescence, laches and/or estoppel."  *See* Answer at 5.  Lacking any evidence to support this affirmative defense, Defendants could only allege this affirmative defense "upon information and belief".  A speculative affirmative defense such as this cannot seriously call into question Plaintiff's overwhelming, *objectively supported*, evidence of infringement laid-out in detail above.

In short, Defendants have plead little more than a baseless "12(b)(6)" affirmative defense and a self-admitted "guess" defense.  Neither raises serious a question – or even a passing question – as to the validity of Plaintiff's claims.  Defendants affirmative defenses will not succeed.

### III.    Plaintiff Will be Irreparably Harmed Absent a Preliminary Injunction

The law presumes irreparable harm to a trademark owner whose mark is being infringed by a third party.  In the present case, the presumption is particularly accurate, as Plaintiff's

"Birdie" branded business has recently began experiencing a "revitalization" after several years of hard work by Plaintiff's lone principal, Kenneth Solomon.  As a result, Defendants' infringement doles-out a particularly acute harm on Plaintiff – harm that could ultimately end its business.

> **A.      Plaintiff's Convincing Showing of Likelihood of Success on the Merits Yields a Strong Presumption of Irreparable Harm**

The Second Circuit has affirmed repeatedly that:

> [i]n trademark disputes, "a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm."

*See, e.g., Malletier*, 426 F.3d at 537 (quoting  *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988)); *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004) (injunction denied because likelihood of success not shown); *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 184 (2d Cir. 2001).

In the present case, Plaintiff has shown an overwhelming likelihood of success on the merits.  Consequently, Plaintiff has equally shown irreparable harm absent injunctive relief.  As the following discussion demonstrates, the presumptions is particularly accurate for Plaintiff due to the peculiarities of Plaintiff's situation.

> **B.      Plaintiff Risks Losing its Recently Revitalized Brand – and its Business – Due to Defendants' ongoing Infringement**

The law is well settled that a substantial risk of loss of one's business  – that is, the risk of being forced to shut a business – constitutes irreparable harm warranting preliminary injunctive relief.  *See, e.g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568 (1975); *Tom Doherty Assocs*, 60 F.3d at 38; *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*

*of New York, Inc.*, 749 F.2d 124, 125-126 (2d Cir. 1984); *John B. Hull, Inc. v. Waterbury*

*Petroleum Products, Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978), *cert. denied* 440 U.S. 960 , 99 S.Ct.

1502 (1979); *and see Performance Unlimited, Inc. v. Questar Publishers, Inc.* 52 F.3d 1373,

1382 (6th Cir. 1995); *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River*

*Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986).

As the Supreme Court stated in *Doran*:

> [a]s required to support such relief, these respondents alleged (and
> petitioner did not deny) that absent preliminary relief they would
> suffer a substantial loss of business and perhaps even bankruptcy.
> Certainly the latter type of injury sufficiently meets the standards
> for granting interim relief, for otherwise a favorable final judgment
> might well be useless.

422 U.S. at 932, 95 S.Ct. at 2568.  The Second Circuit has similarly opined on the topic:

> [w]e believe that the governing principle is as follows. Where the
> availability of a product is essential to the life of the business . . .
> the damages caused by loss of the product will be far more difficult
> to quantify than where sales of one of many products is the sole
> loss. In such cases, injunctive relief is appropriate. . . . Where the
> loss of a product will cause the destruction of a business itself or
> indeterminate losses in other business, the availability of money
> damages may be a hollow promise and a preliminary injunction
> appropriate.

*Tom Doherty Assocs.*, 60 F.3d at 38.

In the present case, Kenneth Solomon, the sole principal and effectively Plaintiff's sole

employee has labored in the recent months to revive and revitalize a business not long ago on the

brink of demise.  Solomon Declaration at ¶¶ 20 and 29 .  Through his efforts, Mr. Solomon has

positioned Plaintiff for a "comeback" by establishing new supplier agreements with an overseas

clothing manufacturer, thereby creating new supply chain dynamics.  Solomon Declaration at ¶

21.

Plaintiff's new supply chain, with its favorable manufacturer agreement, has given Plaintiff the ability to compete effectively in the competitive sports and golf clothing markets in ways previously unavailable to it. Solomon Declaration at ¶ 21. Any significant disruption to its ability to move its products through the supply chain to the consumer may adversely impact Plaintiff's newly established relationships with manufacturers and its ability to compete in the marketplace. Solomon Declaration at ¶ 22.

Plaintiff's business has effectively a single asset, a single product, namely "Birdie" clothing such as jackets. Solomon Declaration at ¶ 6. The confusion caused by Defendants' ongoing sales under the "Birdie" brand impact Plaintiff's business at its very core: if Plaintiff is not able to distinguish itself from other clothing manufacturers, particularly competitors selling in the sporting goods and golfing goods channels of trade, it loses its ability to move its product. Solomon Declaration at ¶ 22. In ordinary circumstances where a business has a single product line, the loss of that line would mean the imminent demise of the business. In the present case that harm is magnified, as an inability to move product would lead to a termination of the manufacturing agreement critical to Plaintiff's revitalized business. Solomon Declaration at ¶ 22.

Furthermore, Plaintiff's "Birdie" mark and its company identity are so closely entwined that many, if not most, wholesale customers know Plaintiff as "Birdie" and not as "The Richard A. Leslie Company". Solomon Declaration at ¶ 13; Braun Declaration at ¶ 7; Faye Declaration at ¶ 5; Lonigro Declaration at ¶ 7. Thus, to the extent that such customers are unable to identify Plaintiff through its "Birdie" mark, they will be unable (or at best have great difficulty) doing business with Plaintiff. In a significant, practical sense, "Birdie" and Plaintiff are synonymous in

the eyes of its customers, and the loss of the distinctive use of "Birdie" would mean the loss of Plaintiff's identity.

Absent a preliminary injunction, Defendants will continue selling "Birdie" branded clothing goods – clothing goods sold through sports and specifically golf related retail channels – pushing Plaintiff toward its demise.

### C.    Plaintiff has Acted as Diligently as Humanly Possible in Bringing the Instant Motion

Defendants will no doubt characterize Plaintiff as having acted slowly in bringing the present action and/or making the instant motion.  Defendants will then attempt to characterize this purported delay as being unreasonable, thereby warranting denial of the present motion.  To have merit, such an argument would have to ignore the specific, highly relevant facts of the present case and ignore an important aspect of the applicable case law.

First, Plaintiff recognizes that Defendants will readily find any number of cases in which a plaintiff's motion for preliminary injunction was denied due to a delay in bringing such motion; however, a delay in seeking preliminary injunction relief mitigates against a finding of irreparable harm (and therefore against granting the motion) *when the delay is unreasonable or undue*.  *See, e.g., Tom Doherty Assocs.*, 60 F.3d at 39 ; *Hasbro, Inc.*, 858 F.2d at 79 (delay was not "undue" and so did not defeat finding of irreparable harm); *MetLife, Inc. v. Metropolitan Nat. Bank*, 388 F.Supp.2d 223, 237-38 (S.D.N.Y. 2005) (delay in seeking preliminary relief was not dilatory and so did not bar relief).  Judge Castel recently summarized the Second Circuit's position on the matter in the *MetLife* case, stating:

> [a]lthough the law of this Circuit is not explicit as to which party bears the ultimate burden of proof on the issue of delay, both parties agree that the opposing party must first come forward with

> evidence of delay, at which point the plaintiff must set forth a legally sufficient explanation for the delay. . . . It is logical that the movant should bear the ultimate burden of proof on the absence of delay because it is on the movant's shoulders to prove that it will suffer irreparable harm if no injunction is granted. In this case, I hold [movant] to that burden and conclude that it is has not unreasonably delayed in seeking judicial relief.

*MetLife*, 388 F.Supp.2d at 237.

In the present case, Plaintiff has been as diligent as humanly possible under the circumstances. Plaintiff is essentially a one-man operation, that man being Kenneth Solomon. Solomon Declaration at ¶ 28. Mr. Solomon runs substantively all the day to day operations of Plaintiff, including: generating sales; taking and processing customer orders; placing orders with the overseas manufacturer; coordinating and managing shipments; managing advertising and marketing materials; creating and executing business strategies; making all product line decisions; monitoring the marketplace including competitors' activities; and monitoring and enforcing its trademark rights. *Id.*

Mr. Solomon, and therefore Plaintiff, first learned of Defendant Birdie LLC's infringing activities in May, 2007, when Defendant Birdie LLC contacted Plaintiff seeking to discuss Plaintiff's "Birdie" mark. Solomon Declaration at ¶ 24. Plaintiff immediately entered into good faith discussions with Defendant Birdie LLC. Solomon Declaration at ¶ 25.

Plaintiff eventually came to the realization that Defendant Birdie LLC was not acting in good faith, that is, it was not attempting to move negotiations forward towards a point of agreement between the parties. *Id.* Immediately upon reaching this realization, Plaintiff obtained legal counsel and initiated suit. Solomon Declaration at ¶ 26. Plaintiff believed that the

act of filing suit would "bring Birdie LLC back to the negotiating table," for good faith discussions and attempted to do what it could to "leave the door open" to such an eventuality.  *Id.*

Defendant Birdie LLC failed to re-enter negotiations, and so Plaintiff immediately began to prepare the present motion.  Solomon Declaration at ¶ 27.  In order to prepare the present motion properly, Plaintiff collected extensive supporting materials, engaged in extensive substantive discussions with counsel, and contacted several witnesses.  Solomon Declaration at ¶ 29.  Unfortunately, being a "one man operation," Plaintiff was faced with a serious Hobson's Choice: either (a) expend sufficient efforts on the instant motion at the expense of its day-to-day business or (b) divert adequate resources to keep its day-to-day business operational at the expense of a more quickly filed motion for preliminary injunction.  Solomon Declaration at ¶ 28.  Plaintiff lacked adequate resources to undertake both tasks expeditiously in parallel as a larger business concern would be able to do. *Id.*

Thus the Hobson's Choice: to continue to run the business at the possible expense of losing the preliminary injunctive relief – relief necessary to avoid irreparable and possibly business ending harm – or let certain aspects of the day-to-day business operations falter – a result that would easily have catastrophic results on Plaintiff's business viability.  Solomon Declaration at ¶ 29.  Consequently, Plaintiff sought to balance the two crucial demands as best as possible by collecting the information necessary for the instant motion while continuing to run the day-to-day operations of the business.  *Id.*

Plaintiff concedes that in many cases, a delay in bringing a preliminary injunction motion indicates a lack of the irreparable harm necessary to succeed on such a motion; this case, however, is not one of them.

26

**IV.    The Balance of Hardships Tips Decidedly in Plaintiff's Favor**

Even if Plaintiff weren't able to show a likelihood of success on the merits – a showing Plaintiff contends it has met quite readily – Plaintiff would nonetheless be entitled to injunctive relief, as the balance of hardships tips decidedly in its favor.

Where an infringer knowingly engages in infringing activity, any harm to its business it suffers as a result of injunctive relief must be disregarded in the balancing of hardships, as the infringing party effectively brought the harm to itself.  *See*, *Sanofi-Synthelabo v. Apotex Inc.*, 488 F.Supp.2d 317, 344-45 (S.D.N.Y. 2006), *aff'd* 470 F.3d 1368 (Fed. Cir. 2006) (defendant's "harms were almost entirely preventable, and were incurred by the company's own calculated risk," therefore such harm was disregarded in balancing the hardships of injunctive relief).  As discussed previously in section II.B.6, Defendant has acted with callous disregard for Plaintiff's trademark rights, electing to continue infringement despite knowing full well of its infringement.  Plaintiff, on the other hand, is merely continuing its legitimate, innocent use of its "Birdie" mark *as it has done for over half a century*.  Defendant Birdie LLC has therefore brought harm not only on Plaintiff, but on itself as well.  It cannot now be heard to argue that, because its"calculated risk" failed, the balance of hardships somehow favors it and not Plaintiff.

## CONCLUSION

Plaintiff established trademark rights in its "Birdie" mark through more than 50 years of continuous use and over REDACTED *million* "Birdie" products sold.  Defendant Birdie LLC by contrast has used the "Birdie" mark for less than three years.  Both Plaintiff and Defendant use the "Birdie" mark on clothing marketed and sold to golfers.  The marks and goods are essentially

identical.  Likelihood of confusion – and therefore infringement – is all but a foregone

conclusion.

Plaintiff's comeback from the brink of death is due to Ken Solomon's untiring work.  To

allow Defendants to continue infringing in the face of Plaintiff's overwhelming likelihood of

success may very well sound Plaintiff's the death knell.  Furthermore, in light of Defendant

Birdie LLC's knowing disregard of Plaintiff's trademark rights, there exists no reason to deny the

instant motion.

Plaintiff's motion for preliminary injunctive relief should be granted.

_____
Jeffrey Sonnabend (JS1243)
SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215-6012
718-832-8810
JSonnabend@SonnabendLaw.com

Attorney for Plaintiff

Dated:  September 7, 2007

.

28

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION FOR PRELIMINARY INJUNCTIVE

RELIEF was served on the date below upon counsel for Defendants by first class mail to:

        Mr. Toby M.J. Butterfield
        Cowan, DeBaets, Abrahams & Sheppard LLP
        41 Madison Avenue
        34th Floor
        New York, NY 10010

_____
Jeffrey Sonnabend (JS1243)
Attorney for Plaintiff

SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215
718-832-8810
JSonnabend@SonnabendLaw.com

Dated: September 7, 2007