UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
Richard A Leslie Co., Inc.,

        Plaintiff,                                        DECLARATION OF KEN
                                                          SOLOMON
                v.
                                                          07-cv-5933 (LAK)
Birdie, LLC, and Golfsmith International
Holdings, Inc.,

        Defendants.
------------------------------------------------------x
```

I, Ken Solomon, hereby declare the following:

1.   I am President of Richard A. Leslie Co., Inc.

2.   The predecessor of Richard A. Leslie Co., Inc., Globe Sports Products, was founded in approximately 1936 by my grandfather, Abe Slomon. Richard A. Leslie Co., Inc. was established in 1956 as a division of Globe Sports Products for the purpose of handling retail accounts. Richard A. Leslie Co., Inc. grew to become the dominant business of Globe Sports Products, and the two were eventually consolidated under the Richard A. Leslie Co., Inc. entity.

3.   The company was handed-down to my father, Robert Solomon and my uncle, Louis Solomon, and then to my cousin, Eric Solomon and myself. I have been running the business since 2000. Eric Solomon is no longer with the Richard A. Leslie Co., Inc.

4.   From its inception through the present day, Richard A. Leslie Co., Inc. has manufactured or had manufactured for it various sports related clothing items, including among others jackets and golf jackets, rain pants, warmup suits and wind shirts.

5.   From its inception through the present day, Richard A. Leslie Co., Inc. has

branded its clothing items with the "Birdie" brand. The products have been and continue to be branded in part by means of labels affixed to the goods, for example, in the form of collar labels for jackets and golf jackets. The "Birdie" brand is effectively Richard A. Leslie Co., Inc.'s only significant asset.

6. "Birdie" has been Richard A. Leslie Co., Inc.'s only brand from the company's inception through the present time.

7. From its inception through the present day, Richard A. Leslie Co., Inc. has advertised and/or promoted its goods under the "Birdie" brand, those products including jackets, golf jackets and warmup suits, among others. The "Birdie" brand was and remains focused on sports related clothing, including an emphasis on golf, among other emphasized sports. Richard A. Leslie Co., Inc. has marketed and continues to market its jackets to golfers and sells golf jackets to golfers.

8. The original logo, still in use today, incorporates a golf club, two golf tees and two golf balls into its design. Exhibit 1 is a true and correct copy of this mark.

9. Richard A. Leslie Co., Inc.'s use of the "Birdie" mark includes use on product labels, advertisements and catalogs. Exhibit 2 attached hereto is a true and correct copy of "Birdie" labels used on Richard A. Leslie Co., Inc. products.

10. From the earliest catalogs, Richard A. Leslie Co., Inc. catalogs have featured golf jackets and images of golfers. The layouts of these catalogs have featured golf equipment and golf surroundings. Exhibit 3 attached hereto are true and correct copies of Richard A. Leslie Co., Inc. "Birdie" product catalogs displaying "Birdie" branded apparel.

11.   Richard A. Leslie Co., Inc. owned three federal trademark registrations for the mark "Birdie" in both plain word form and in logo form. Two of these registrations were inadvertently allowed to go abandoned when Richard A. Leslie Co., Inc. failed to file necessary paperwork and pay necessary renewal fees.

12.   Richard A. Leslie Co., Inc.'s business under its "Birdie" brand grew substantially from its inception into 1980's.

13.   The "Birdie" brand has become synonymous with the Richard A. Leslie Co., Inc. in the eyes of many, if not most or all, of our customers. Richard A. Leslie Co., Inc. has received over the years numerous inquiries and orders from customers and potential customers directed to "Birdie" and not "Richard A. Leslie Co., Inc." Over the years, Richard A. Leslie Co., Inc. has received numerous checks from customers made payable to "Birdie" and not "Richard A. Leslie Co., Inc.". Exhibit 4 is a true and correct copy of such a check.

14.   At the height of its business, Richard A. Leslie Co., Inc. employed over 175 employees and independent contractors (including employees at Richard A. Leslie Co., Inc.'s manufacturing arm, which was technically a different business entity). At the height of its business, Richard A. Leslie Co., Inc. had a sales force of approximately 15 to 20 sales representatives.

15.   From the inception of the "Birdie" brand through the present, I estimate Richard A. Leslie Co., Inc. has sold approximately REDACT million jackets under the "Birdie" brand totaling approximately REDACT million.

16. Exhibit 5 is a true and correct copy of a spreadsheet of unit production of "Birdie" brand jackets dating from February, 1990 through 2002. This document was prepared by a plant manager for his own use.

17. From approximately the 1987 to 1989 time frame to the recent past, Richard A. Leslie Co., Inc. sales of "Birdie" products decreased year-to-year, reaching a low point in late 2006.

18. Exhibit 6 are true and correct copies of exemplary invoices for "Birdie" brand jackets from 2002 through the present.

19. My present average unit price at wholesale is approximately $16 to $20.

20. By sometime in late 2006, sales had decreased to a point that I made a decision to close the business of Richard A. Leslie Co., Inc. I sent a letter to Richard A. Leslie Co., Inc. customers in January of 2007 informing them of my decision. A true and correct copy of this letter is attached as Exhibit 7.

21. Before I concluded business, however, I was able to reach out to and consummate a business relationship with a Chinese clothing manufacturer. The terms of the business agreement reached between Richard A. Leslie Co., Inc. and the Chinese manufacturer were such that Richard A. Leslie Co., Inc. would, in my belief, be viable once again. In effect, the manufacturing agreement saved Richard A. Leslie Co., Inc.

22. If I am unable to sell enough products, for example, because of trademark infringement by others resulting in an inability to differentiate my products from competitors', I believe the manufacturer will terminated our agreement. Such an event would likely force Richard A. Leslie Co., Inc. out of business.

23.     At no time did I terminate the business of Richard A. Leslie Co., Inc.. At no time did I cease operations of Richard A. Leslie Co., Inc.. At no time did I stop filling orders for Richard A. Leslie Co., Inc.'s "Birdie" products. At no time did I discontinue use of the "Birdie" mark. At no time did I tell others that they were free to use the "Birdie" mark.

24.     In May, 2007, Birdie LLC contacted Richard A. Leslie Co., Inc. regarding the "Birdie" mark. Birdie LLC explained that it had erred by not first ensuring that the "Birdie" mark was available for its use before it began using the mark. Birdie LLC further explained that it had applied for registration of its own "Birdie" mark for clothing but had been refused registration due to a likelihood of confusion with Richard A. Leslie Co., Inc.'s registration of its "Birdie" mark.

25.     Richard A. Leslie Co., Inc. and Birdie LLC entered into discussions regarding Richard A. Leslie Co., Inc.'s rights in its "Birdie" mark with the ultimate goal of possibly granting some or all rights in the mark to Birdie LLC. The discussions continued until the last week of June, 2007, when I realized that Birdie LLC was not acting in good faith, that is, they were not seeking to move the discussion forward in a meaningful manner.

26.     I asked Birdie LLC to move the discussions forward in a productive manner or to stop using the "Birdie" mark. When it became apparent to me that Birdie LLC would not acquiesce to either request, I retained counsel and filed the present law suit. I hoped that by filing the law suit, Birdie LLC would be convinced to re-initiate productive discussions or cease use of the "Birdie" mark.

27.     Upon receiving the initial responsive communication from Birdie LLC's counsel, I concluded that Birdie LLC would not re-initiate discussions nor stop use of the "Birdie" mark,

and so I instructed my counsel to immediately begin preparation of the present motion. I have been diligently collecting the necessary information for the present motion since that time, including identifying and initially contacting individuals who might provide relevant declarations and collecting relevant documents.

28. Being the sole individual running Richard A. Leslie Co., Inc., I am responsible for all substantive aspects of Richard A. Leslie Co., Inc.'s business, including generating sales; taking and processing customer orders; placing orders with the overseas manufacturer; coordinating and managing shipments; managing advertising and marketing materials; creating and executing business strategies; making all product line decisions; monitoring the marketplace including competitors' activities; and monitoring and enforcing its trademark rights.

29. I have struggled to continue running Richard A. Leslie Co., Inc. while collecting the information for the present motion. I have been forced to balance the harm my business will suffer if I run it inadequately against the harm I suffer from Birdie LLC's infringement and the possibility of failing to timely file the present motion. As a result, collecting the necessary information has been slowed somewhat by my ongoing responsibilities in running the day-to-day operations of Richard A. Leslie Co., Inc.

I swear under penalty of perjury that the foregoing is true and correct, except as to those statements made upon information and belief, which I believe to be true and correct.

Ken Solomon

Date: 9/7/07